IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL RUSSELL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | |
| Commissioner of Social Security[1] | : | NO. 21-939 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                  February 27, 2023

Randall Russell ("Plaintiff") seeks review of the Commissioner's decision denying his claim for Supplemental Security Income ("SSI"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

**I.   PROCEDURAL BACKGROUND**

Plaintiff protectively filed for Disability Insurance Benefits ("DIB") and SSI on May 2, 2011, alleging disability beginning on July 1, 2008, as a result of depression, nerve damage and reflex sympathetic dystrophy ("RSD") of the right leg, and a fractured right tibial bone. Tr. at 70, 80, 90, 91. Although Plaintiff's claims were denied initially, id. at 79, 89, 90, 91, after an administrative hearing, the ALJ found that Plaintiff was

---

[1]Kilolo Kijakazi is currently the Acting Commissioner of Social Security, see https://www.ssa.gov/agency/commissioner/ (last visited Feb. 14, 2023), and should be substituted for Andrew Saul as the defendant in this action. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disabled. Id. at 96-99. Specifically, the ALJ found that Plaintiff's mental impairment met Listing 12.04 related to affective disorders. Id. at 97.[2] The ALJ thus found Plaintiff disabled as of July 1, 2008. Id. at 99.

At some point after he started receiving benefits, Plaintiff was incarcerated, and his SSI and DIB benefits were suspended. See tr. at 15; see also 20 C.F.R. §§ 404.468(a) ("No monthly [DIB] benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony."), 416.1325(a) (explaining suspension of SSI benefits due to residency in public institution). After a year's incarceration, Plaintiff's SSI benefits were terminated, but his DIB benefits were reinstated upon his release in 2018. See tr. at 15; see also 20 C.F.R. § 416.1335 ("We will terminate your eligibility for [SSI] benefits following 12 consecutive months of benefit suspension for any reason.").

On August 2, 2018, after his release from prison and the termination of his SSI benefits, Plaintiff filed a new application for SSI, alleging that he became disabled on July 1, 2008, as a result of post-traumatic stress disorder ("PTSD"), bipolar disorder, right leg problems, nerve damage, and regional pain syndrome. Tr. at 101-02, 117, 203-09, 237. The application was denied initially, id. at 118-22, and Plaintiff requested an administrative hearing, id. at 123-25, which took place on July 13, 2020. Id. at 39-69.[3]

---

[2]The ALJ applied Listing 12.04 as it was then-written. The Listing has been amended since that time, as will be discussed.

[3]The ALJ originally convened the hearing on July 29, 2019, but continued it to give Plaintiff the opportunity to obtain counsel. Tr. at 32-37.

On August 20, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. Id. at 15-24. The Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6; 20 C.F.R. § 416.1481.

Plaintiff commenced this action in federal court on March 1, 2021, Docs. 1 & 2, and the matter is now fully briefed and ripe for review. Docs. 14, 22, 25.[4]

## II.  LEGAL STANDARD

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe

---

[4]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order, In Re: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Docs. 8, 29, 32.

>impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
>5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 416.920(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

III. <u>**DISCUSSION**</u>[5]

A. <u>**Summary of the Record**</u>[6]

Plaintiff was born on June 13, 1981, making him 37 years old when he applied for SSI (August 2, 2018), and 39 years old at the time of the ALJ's decision (August 17, 2020). Tr. at 203. Plaintiff attended special education classes until he dropped out of high school in the ninth grade, and he subsequently received his GED in June of 1998, and has no past relevant work. Id. at 23, 238, 385.

As previously mentioned, an ALJ found Plaintiff disabled in May of 2013, finding that his mental health impairments met Listing 12.04 as it was then written. Tr. at 97. His benefits were suspended while he was in prison and his SSI benefits were terminated after a year's suspension. Id. at 15. While incarcerated, Plaintiff managed his anxiety and PTSD symptoms with clonidine[7] and reported no side effects. Id. at 318, 320. After his release from prison in August 2018, he reported being without medication for a short period, but by February 2019 was doing much better after resuming medication. Id. at 352, 619. In mental status examination ("MSE") findings, Guillermo Vasquez, a clinician at Hispanic Community Counseling Services, frequently found that Plaintiff had

---

[5]The relevant period for purposes of Plaintiff's present SSI application began in August 2018. See infra at 11.

[6]Because Plaintiff's claims arise not from the ALJ's consideration of the treatment record, but from his decision not to give legal effect to the prior disability ruling, I provide an abbreviated discussion of Plaintiff's mental health treatment record.

[7]Clonidine is used to treat hypertension. See https://www.drugs.com/clonidine.html (last visited Feb. 9, 2023).

elevated psychomotor activity, an anxious, sad or irritable mood, a flat or anxious affect, and poor insight, but otherwise the MSEs were unremarkable.  See, e.g., id. at 620 (2/8/19), 623 (1/11/19), 626 (1/4/19), 629 (12/17/18), 632 (12/14/18).  It appears that Plaintiff's outpatient mental health treatment at Hispanic Community Counseling ended in February 2019, as there are no records for this provider after that date.  Id. at 634-36 (treatment note dated 2/11/19).

Plaintiff began treatment at River's Bend Crisis Management Services on April 30, 2020, for drug addiction and the treatment focused on drug rehabilitation, tr. at 422-543, including an intensive outpatient drug treatment program at GEO/Erie.  Id. at 815-35.  Plaintiff testified at the administrative hearing on July 13, 2020, that he was not then taking any medication for his mental health impairments and there was no evidence of recent mental health treatment.  Id. at 48.

**B.     ALJ's Current Decision**

In considering the 2018 SSI application, the ALJ stated that "res judicata or collateral estoppel do not apply because there was a change in the mental listings that occurred between 2013 and 2018."  Tr. at 15.  The ALJ found that Plaintiff suffered from the severe impairments of PTSD, generalized anxiety disorder ("GAD"), opiate use disorder, facet joint syndrome/complex regional pain syndrome ("CRPS"), and obesity, but that his impairments did not meet or equal any of the applicable Listings.  Id. at 17.  In his discussion of the Listings, the ALJ made no reference to the 2013 Listings finding.  Id. at 18-19.  The ALJ found that Plaintiff could perform light work except that he can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; can

6

frequently balance, and occasionally stoop, kneel, crouch, and crawl; can have occasional exposure to extreme cold, vibration, and hazards, such as moving machinery and unprotected heights; can perform unskilled work, with reasoning level 1 or 2, and perform work in a stable work environment with occasional changes in the work setting. Id. at 19. Based on this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform the jobs of table worker – leather products, inserter – paper goods, and garment bagger. Id. at 24.

### C. Plaintiff's Claims

Plaintiff contends that the ALJ's decision was not supported by substantial evidence because he failed to apply the doctrine of collateral estoppel in light of Plaintiff's continuing receipt of DIB and failed to properly consider the prior ALJ decision. Doc. 14 at 4-20. Plaintiff also argues that remand is required because the appointment of the Commissioner of Social Security violates the Separation of Powers clause resulting in an ALJ decision that is constitutionally defective. Id. at 20-23. Defendant responds that the ALJ properly declined to apply collateral estoppel and that his decision is supported by substantial evidence. Doc. 22 at 3-6. In addition, although Defendant agrees that the appointment of the prior Commissioner violated the separation of powers, she argues that this does not entitle Plaintiff to remand. Id. at 6-19. Plaintiff filed a reply, arguing that Defendant misrepresented and mischaracterized his arguments and that Plaintiff has standing to present the separation of powers argument. Doc. 25.

1.     Collateral Estoppel[8]

Plaintiff argues that the ALJ erred by failing to apply the doctrine of collateral estoppel in light of his continued receipt of Title II (DIB) benefits.  Doc. 14 at 2, 6-17.  Specifically, Plaintiff relies on the following regulation:

> *Collateral estoppel – issues previously decided.*  An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act . . . .  If this happens, the [ALJ] will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong.

20 C.F.R. § 416.1450(f).  Plaintiff argues that because he continues to receive DIB resulting from the 2013 finding of disability, the ALJ erred in not applying collateral estoppel to find him disabled for purposes of his application for SSI filed on August 2, 2018.  Doc. 14 at 6-20.[9]  Defendant responds that collateral estoppel does not apply in this case and that the intervening change in the regulations governs consideration of Plaintiff's August 2018 SSI claim for benefits.  Doc. 22 at 3-6.

Plaintiff's argument is facially appealing because the effect of the failure to apply collateral estoppel results in inconsistent (or incongruent) conclusions:  disabled for purposes of DIB and not disabled for purposes of SSI, as is evidenced in this case.  The

---

[8]The terms "collateral estoppel" and "res judicata" are used without distinction in the authority cited in this discussion.

[9]Plaintiff claims that "the ALJ disregarded the Commissioner's legally binding regulations and the instructions of the HALLEX [the Commissioner's Hearings, Appeals and Litigation Law Manual] and instead "adhered to a clandestine policy instructing SSA staff to ignore the law."  Doc. 14 at 7.

8

law, however, supports this result and the ALJ's decision is supported by substantial evidence.

The regulations suspend benefits for both SSI and DIB for any period in which a claimant is incarcerated. 20 C.F.R. §§ 404.468(a), 416.1325(a); see also Schweiker v. Wilson, 450 U.S. 221, 224 (1981) ("From its very inception, the [SSI] program has excluded from eligibility anyone who is an 'inmate of a public institution.'") (quoting 42 U.S.C. § 1382(e)(1)(A)). However, unlike for DIB, a suspension of SSI benefits results in termination of benefits if the suspension lasts for 12 consecutive months. 20 C.F.R. § 416.1335[10]; see also 42 U.S.C. § 1383(j) (reapplication required if SSI recipient was ineligible for 12 consecutive months). Thus, the governing regulations contemplate potentially different results. Otherwise, the regulations governing the resumption of benefits would be identical and no subsequent application for SSI would be required. See Biley v. Comm'r of Soc. Sec., Civ. No. 11-3905, 2012 WL 4808439, at *4 (N.D. Cal. Oct. 9, 2012) ("If termination [of SSI benefits due to suspension for more than 12 months] occurs, reinstatement is no longer permitted and the former recipient must reapply to reestablish disability status . . . .") (citing Warren v. Bowen, 804 F.2d 1120,

---

[10]The governing regulations provide for the resumption of SSI if the claimant is released from a public institution within a year. 20 C.F.R. § 416.1325(b); see also Stubb-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008) ("While the regulations provide for the resumption of suspended benefits upon an otherwise eligible recipient's release from custody . . . they provide for no such reinstatement where a recipient's eligibility has been terminated after 12 consecutive months of suspension.").

1121 (9th Cir. 1986)). If collateral estoppel applied, there would be no need for reapplication because the earlier decision would be controlling.[11]

In addition, the Third Circuit and the district courts of this circuit have held that res judicata does not apply in subsequent decisions addressing a subsequent period of disability. "[E]arlier findings and decisions of an ALJ are not binding in later proceedings which involve a determination of whether a claimant is disabled for a subsequent period." Zavilla, 2009 WL 3364853, at *13.

> The affirmative defense of *res judicata* did not bind [the ALJ in the second decision] because the record contained new evidence that was unavailable to [the first ALJ], and because the relief sought was limited to a determination that he was disabled from July 1999, instead of May 1995 as alleged in the earlier application.

Id. (quoting Carter v. Barnhart, 133 F. App'x 33, 35 (3d Cir. 2005)). In Zavilla, like the current case, the plaintiff had been found disabled in an earlier ALJ decision and his benefits were suspended and then terminated after a 12-month suspension. Id. at *1. He

---

[11]Plaintiff also argues, incorrectly, that his claim for SSI benefits should have been evaluated under a medical improvement standard for Continuing Disability Review. Doc. 14 at 11-12. A seven-step "medical improvement" standard under 20 C.F.R. § 416.994 applies to determine whether a claimant is entitled to continued receipt of benefits. Zavilla v. Astrue, Civ. No. 09-133, 2009 WL 3364853, at *17 (W.D. Pa. Oct. 16, 2009). "However, the 'medical improvement' standard is not applied when a claimant's eligibility for benefits was terminated and he later re-applies for benefits." Id. (citing Brennan v. Astrue, 501 F. Supp.2d 1303, 1308-09 (D. Kan. 2007)). "Because this case involved new applications for benefits, rather than a continuing disability review, the ALJ properly applied the five-step sequential evaluation process . . . rather than the seven-step 'medical improvement' standard . . . for continuing disability reviews." Oduro v. Kijakazi, Civ. No. 21-78, 2022 WL 1215076, at *4 (M.D. Pa. Apr. 25, 2022) (citing Brennan, 501 F. Supp.2d at 1309; see also 42 U.S.C. § 1383(j) (requiring new application for SSI when prior benefits terminated).

filed another application for SSI several years later, and on appeal from a denial of SSI, argued that res judicata was applicable and the earlier finding of disability was binding. Id. at *12. The court held "that the doctrine of *res judicata* does not bind a subsequent ALJ to findings and decisions of an earlier ALJ when a claimant seeks benefits during a subsequent period of time." Id. at *13; see also Clark v. Barnhart, 206 Fed. App'x 211, 215 (3d Cir. Nov. 20, 2006) ("findings by the previous ALJ that [plaintiff] was disabled under the Act in 1996 does not prove that [he] has an impairment that prevented him from engaging in substantial gainful activity . . . in October 2002 (when [he] reapplied for SSI)"); Krokus v. Colvin, Civ. No. 13-389, 2014 WL 31360, at *1 n.1 (relying on Zavilla, Clark, and Carter to reject res judicata argument).

      Here, the relevant period began in August 2018 when Plaintiff applied for SSI. See 20 C.F.R. §§ 416.501 (claimant may not be paid for SSI for any time period that predates eligibility); 416.202(g) (requiring submission of application for eligibility). Plaintiff's prior disability determination, in contrast, was made on May 3, 2013, at which time the ALJ found that Plaintiff's impairments met Listing 12.04 and that he was disabled as of his onset date of July 2, 2008. Tr. at 96-99. In evaluating Plaintiff's 2018 SSI application, the ALJ considered medical records and evaluations that included records post-dating the original disability finding by more than five years. See id. at 20-23 (ALJ reviewing treatment records and examination reports from 2018-2019). Moreover, with the passage of time, Plaintiff changed the bases for his application for

benefits.[12] Thus, Plaintiff was seeking benefits for a completely different time period and based on somewhat different impairments. Rather than "a clandestine policy . . . to ignore the law," Doc. 14 at 7, the ALJ properly determined that collateral estoppel did not apply.

In his opinion evaluating Plaintiff's 2018 application for SSI, the ALJ specifically considered the applicability of collateral estoppel and determined that "res judicata and/or collateral estoppel do not apply because there was a change in the mental listings that occurred between 2013 and 2018, when the new Title XVI application was filed." Tr. at 15. At the hearing, the ALJ also explained the issue of res judicata.

> The reason that res judicata does not apply in this case is that between 2013 and the time that he filed the current application, there was a change in the mental health listings. The earlier Decision found that he met mental health Listing 12.04. However, that listing has been changed and, therefore, res judicata does not apply to the claim that's being made under the new standard. And I will make a Decision on Title XVI, adjudicating it under the current standards that are in effect.

Id. at 44.

The Social Security Administration made changes to the mental health listings effective January 17, 2017, applicable to "new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date. 81 Fed.

---

[12]In his 2011 applications for DIB and SSI, Plaintiff claimed that he was disabled due to depression, nerve damage of the right leg, RSD of the right leg, and a fractured tibia of the right leg. Tr. at 80. In contrast, in his 2018 SSI application, Plaintiff claimed he was disabled due to PTSD, bipolar disorder, right leg problems, nerve damage, and regional pain syndrome. Id. at 101-02.

Reg. 66138, 66138, 2016 WL 5341732 (Sept. 26, 2016).  The Administration noted that "[w]e expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." Id. at 66138 n.1.  Adoption of Plaintiff's res judicata argument would circumvent the clear edict of the Administration that amendments to the listings are applicable to Plaintiff's claim filed in 2018.

When the ALJ granted Plaintiff's applications for SSI and DIB in 2013, he found that Plaintiff's impairments met Listing 12.04, specifically noting that Plaintiff met the "paragraph C" criteria. Tr. at 97.  At that time, the C criteria of Listing 12.04 required:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, **and one of the following:**
> 1. Repeated episodes of decompensation, each of extended duration; **or**
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; **or**
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(C) (eff. 2013) (emphasis added).  The ALJ reviewing the earlier applications found that Plaintiff satisfied the C criteria because

> the evidence shows a medically documented history of a chronic affective disorder of at least 2 years['] duration causing more than minimal limitation of [the] ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and a current history of 1 or more years['] inability to function

13

> outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Tr. at 97.

Pursuant to the revised rules, the C criteria for Listings 12.04, 12.06, and 12.15[13] require:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and **there is evidence of both:**
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder . . . ; **and**
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life . . . .

20 C.F.R. pt. 404, subpt P, app. 1 §§ 1204(C), 12.06(C), 12.15(C) (eff. 2020) (emphasis added). Accordingly, although the 2013 decision contained no discussion of marginal adjustment, a finding of marginal adjustment was required in order to satisfy the revised C criteria. In his decision, the ALJ did address marginal adjustment and concluded that Plaintiff had not proven this portion of the C criteria.

> [T]he record does not document marginal adjustment, that is, minimal capacity to adapt to changes in his environment or to

---

[13]As previously mentioned, Plaintiff claimed different mental impairments in his 2011 and 2018 applications. With respect to the 2011 applications for DIB and SSI, the first ALJ determined that Plaintiff had an affective disorder that was severe and evaluated the severity of his affective disorder utilizing Listing 12.04 (affective disorders), finding his impairments met the C criteria of Listing 12.04. Id. at 97. In contrast, the second ALJ utilized Listings 12.06 (Anxiety and obsessive-compulsive disorder) and 12.15 (Trauma- and stressor-related disorders) to analyze Plaintiff's severe impairments of PTSD and GAD with respect to his 2018 SSI application. Id. at 17-19.

14

> demands that are not already part of his daily life . . . . The record does not demonstrate that [Plaintiff] is unable to function outside of his home or a more restrictive setting. [Plaintiff] reports he is able to use public transportation independently, shop in stores, and attend appointments . . . .

Tr. at 19.

This conclusion, as well as the ALJ's finding that Plaintiff could perform a limited range of light work, are supported by substantial evidence.[14] Based on his review of the evidence, the ALJ found that Plaintiff's mental health and pain symptoms were "relatively stable with conservative treatment." Tr. at 22. While incarcerated, Plaintiff managed his anxiety and PTSD symptoms with clonidine and reported no side effects. Id. at 318-20. After his release from prison in August 2018, he reported being without medication for a short period, but was doing much better after restarting medication. Id. at 352, 619. Plaintiff's outpatient mental health treatment appears to have ended in February 2019. Id. at 634-36 (treatment note from Community Counseling dated 2/11/19).

Plaintiff began treatment for drug addiction in April 2020, and the treatment focused on drug rehabilitation, including an intensive outpatient drug treatment program. Tr. at 422-543 (River's Bend), 815-35 (GEO/Erie Outpatient). At the administrative hearing in July 2020, he testified that he was not taking any medication for his mental health impairments. Id. at 48. He attended drug and alcohol treatment as part of his

---

[14] Plaintiff does not challenge the ALJ's consideration of evidence beyond arguing that the ALJ failed to consider the prior ALJ opinion and apply collateral estoppel. Doc. 14 at 4-5.

15

parole and was "trying to see about psych[]," but it was hard with everything closed down due to the pandemic. Id. at 47-48. Thus, there was no evidence of ongoing mental health treatment.

The ALJ found the opinion of consultative examiner Frank Sergi, Ph.D., persuasive as it was supported by the doctor's examination findings and treatment records. Tr. at 23. Dr. Sergi opined, based on his December 5, 2018 examination, that Plaintiff had moderate limitations in his abilities to understand, remember, and carry out complex instructions, and make judgments on complex work-related decision. Id. at 390-91. Similarly, the ALJ found the ALJ found that the December 13, 2018 opinion of State agency psychological consultant, Marci Cloutier, Ph.D., was also persuasive. Id. at 22-23. Dr. Cloutier determined from a review of the record that Plaintiff had moderate limitations in his abilities to carry out detailed instructions and to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 113.

With respect to Plaintiff's physical limitations, James Butcofski, M.D., a State agency medical consultant, found in November 2018 from a record review that Plaintiff could occasionally life and carry up to 50 pounds and frequently lift and carry 25 pounds, consistent with medium level work. Tr. at 110-11; see 20 C.F.R. § 416.967(c) (medium work involves lifting no more than 50 pounds with frequent lifting and carrying up to 25 pounds). The ALJ found that Dr. Butcofski's assessment underestimated "the severity of [Plaintiff's] physical limitations in consideration of ongoing pain treatments, including

16

ablation, injections, and medication." Tr. at 22 (citing id. at 360-81, 659 (9/26/11 – 10/22/18 records from Atlantic Pain and Wellness Institute evidencing lumbar treatment including radio frequency ablation, lumbar medial branch blocks, nerve root blocks, and epidural steroid injections)).

Substantial evidence supports the ALJ's conclusions. The ALJ properly considered the medical and mental health treatment evidence, finding persuasive the opinion evidence consistent with examination findings and the treatment records and crafted the RFC assessment to account for the limitations supported by the record.

To the extent Plaintiff argues that the ALJ erred because he failed to make "any findings" regarding the 2013 decision, Doc. 14 at 17-20, the claim is also meritless. Specifically, Plaintiff argues that the ALJ failed to explain "what weight, if any, was given to the 2013 determination. Doc. 14 at 17.

In his decision, the ALJ explained that

> I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.

Tr. at 22. Plaintiff complains that "[t]he ALJ gave no source for this remarkable assertion . . . ." Doc. 14 at 17.

Effective March 27, 2017, the Social Security Administration amended the rules regarding the evaluation of medical evidence, eliminating the assignment of weight to any medical opinion. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 58444 (Jan. 18, 2017); compare 20 C.F.R. § 416.927 (applicable

to claims filed prior to March 27, 2017) with § 416.920c (applicable to claims filed on or after March 27, 2017).  The regulation governing the consideration of medical opinions and administrative findings in this case specifically provides that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c(a).  The ALJ properly applied this standard of review.  Moreover, for the reasons previously discussed, the ALJ explained that the prior decision was not controlling because there was a change in the mental health listings, tr. at 15, and the ALJ was reviewing a period years after the original award of benefits, utilizing a subsequent change to the mental health listings, and the bases for Plaintiff's alleged disability had changed.  Accordingly, Plaintiff is not entitled to relief on his collateral estoppel claim or the claim that the ALJ failed to or improperly considered the prior administrative decision.

      2.      Appointment of Commissioner

Relying on Seila Law LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183 (2020), Plaintiff argues that the unconstitutional appointment of the Commissioner of Social Security deprived Plaintiff of a valid administrative adjudicatory process.  Doc. 14 at 20-23.  Although Defendant agrees that the statute governing the appointment of the Commissioner of Social Security violates the separation of powers, Doc. 22 at 7, she maintains that this does not support setting aside the decision of the ALJ in this case.  Id. at 7-19.

In Seila Law, the United States Supreme Court found that a violation of the constitutional separation of powers occurs when an executive agency is led by a single director who serves for a longer term than the president and can only be removed for cause. 140 S. Ct. 2197-2207; see also id. at 2201 (applying holding to "an independent agency led by a single Director and vested with significant power"). In 2021, the Supreme Court clarified the impact of Seila Law, holding that an unconstitutional removal provision does not automatically render void all actions taken by individuals subject to that provision:

> Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] as void.

Collins v. Yellen, 141 S. Ct. 1761, 1787 (2021) (emphasis in original). "[I]t is still possible for an unconstitutional provision to inflict compensable harm," but the plaintiff must show that the removal restriction was the cause of the harm he suffered. Id. at 1789.

Applying Seila Law and Collins in social security cases, the judges of this court have concluded that claimants have failed to establish the required nexus between the unconstitutional appointment provision and the denial of their claims. For example, as explained by my colleague the late Honorable Marilyn Heffley:

> [The claimant] has no standing to file a constitutional challenge to the separation of powers violation because she has not established that she sustained an injury traceable to the purportedly unconstitutional removal clause to which Commissioner Saul was subject. Instead of merely tracing her injury – the denial of disability benefits – to Commissioner Saul's ability to delegate power to ALJs and

19

> the Appeals Council in general, . . . [the claimant's] burden is
> higher: she must be able to trace that injury to the actual
> unconstitutional removal clause, which is the unlawful
> conduct in this matter.

Wicker v. Kijakazi, Civ. No. 20-4771, 2022 WL 267896, at *10 (E.D. Pa. Jan. 28, 2022) (citing Collins, 141 S. Ct. at 1779); see also West v. Saul, Civ. No. 20-5649, 2022 WL 16781547, at *16 (E.D. Pa. Nov. 8, 2022) (collecting cases).

In response to the standing argument, Plaintiff asserts that "harm should be presumed" because the matter involves "the unlawful exercise of power by government actors." Doc. 25 at 14-15. In addition, Plaintiff argues that "had these government actors not been illicitly delegated authority, they would not have been able to adjudicate and decide these cases." Id. at 16. As explained by the Collins Court, this is insufficient to establish the nexus between the unconstitutional appointment provision and the denial of Plaintiff's benefits. Therefore, I reject Plaintiff's challenge to the ALJ's decision based on Seila Law.

## VI. CONCLUSION

Considering that Plaintiff's SSI benefits were terminated after a twelve-month suspension, he was required to file a new application for SSI and the ALJ properly determined that collateral estoppel did not apply. In addition, the ALJ's determination was supported by substantial evidence and Plaintiff's challenge to the appointment of the Commissioner of Social Security does not provide a basis for remand.

An appropriate Order follows.